IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ZACHARY HILTON**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:17cv274 |
| | ) | **Electronic Filing** |
| **PORCH.COM** and **MATTHEW** | ) | |
| **EHRLICHMAN,** | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Zachary Hilton commenced this action seeking earnings from commission-based sales allegedly due from his previous employer, Porch.com ("Porch"), under a contract of employment. Plaintiff's complaint sets forth causes of action for breach of contract and recovery for that breach under Pennsylvania's Wage Payment and Collection Law, 43 P.S. §§ 260.1 – 260.12. Presently before the court is defendant Porch's motion *in limine*.[1] The motion seeks to exclude the testimony of plaintiff's damages expert, forensic accountant James Loeffler. After careful consideration of the parties' submissions in conjunction with the motion, the court has determined that the trial will be bifurcated into two phases. Phase one will consist of and be limited to the jury's consideration of the specific interrogatories necessary to establish defendant Porch's liability to plaintiff in the form of breach of the employment contract's commission compensation provision; phase two will encompass the damages, if any, that defendant Porch owes to plaintiff as a result of any breach determined in phase one. Defendant's motion *in limine* will be granted to the extent it seeks to preclude plaintiff from proffering James Loeffler as a witness and/or evidence reflecting the computation of damages. The court will limit defendant's

---

[1] Defendant Ehrlichman was terminated from this lawsuit by a stipulation and order entered on April 21, 2017.

presentation of evidence in phase one in the same manner: it will be precluded from proffering its damages expert, Steve Roberts, and/or evidence reflecting the computation of damages.

>    Rule 42(b) of the Federal Rules of Civil Procedure states in relevant part:
>
>    For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.

FED. R. CIV. P. 42(b).  The decision to bifurcate under Rule 42(b) is a "matter to be decided on a case-by-case basis and must be subject to an informed discretion by the trial judge in each instance."  Robinson v. Nationwide Mut. Ins. Co., 2013 U.S. Dist. LEXIS 25806, *14 (E.D. Pa. Feb. 26, 2013) (quoting Lis v. Robert Packer Hosp., 579 F.2d 819, 824 (3d Cir.1978)).

In exercising its broad discretion to bifurcate issues for trial under Rule 42(b), a trial court should consider whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case.  Enzo Life Scis., Inc. v. Digene Corp., 2003 U.S. Dist. LEXIS 10202, *14-*15 (D. Del. June 10, 2003) (citing Union Carbide Corp. v. Montell N.V., 28 F. Supp. 2d 833, 837 (S.D.N.Y. 1998)).  "In deciding whether one trial or separate trials will best serve [the above factors] … the major consideration is directed toward the choice most likely to result in a just [and] final disposition of the litigation." Id. at *15 (quoting In re Innotron Diagnostics, 800 F.2d 1077, 1084 (Fed. Cir. 1986)); see also 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2388 (2d ed. 2002).

Here, the parties' dispute is centered around the interpretation of the employment contract's provision governing plaintiff's ability to earn commissions above his base salary.  The parties concede that this contractual provision is ambiguous and subject to multiple competing interpretations.  Each has submitted its own expert's report addressing whether plaintiff is owed commission sales earnings as damages.  The authors of these reports purport to opine about the

proper construction and meaning of the commission sales provision, and how under their adopted construction plaintiff is or is not owed additional compensation earnings.

The parties underlying dispute extends well beyond the objective meaning that is to be assigned to the words they employed in constructing the compensation provision.  When a contract term is ambiguous, the better approach, and the one that is consistent with the weight of controlling authority, is to permit the parties to proffer evidence in support of their alternative interpretations so that the court and/or the finder of fact may properly address the purported ambiguity.

Pennsylvania law employs the "plain meaning rule" of interpretation of contracts, which assumes that the intent of the parties to an instrument is "embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement."  Hullett v. Towers, Perrin, Forster & Crosby, Inc., 38 F.3d 107, (3d Cir. 1994) (quoting County of Dauphin v. Fidelity & Deposit Co., 770 F. Supp. 248, 251 (M.D. Pa.) (quotation omitted), aff'd, 937 F.2d 596 (3d Cir. 1991)).  "Nevertheless, a determination whether the language of an agreement is unambiguous may not be possible without examining the context in which the agreement arose."  Id. (citing Steuart v. McChesney, 444 A.2d 659, 662 (Pa. 1982).  Thus, a court is not always confined to the four corners of the written document in determining whether ambiguity exists.  Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1011 (3d Cir. 1980).  Rather, the court must "consider the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning."  Hullett, 38 F.3d at 111 (citing Mellon Bank, 619 F.2d at 1011).

"A contract provision is ambiguous if it is susceptible of two reasonable alternative interpretations."  Id. (citing Mellon, 619 F.2d at 1011).  "If the contract is determined to be ambiguous, then the interpretation of the contract is left to the factfinder, to resolve the

ambiguity in light of extrinsic evidence." Id.; accord Stendardo v. Federal Nat'l Mortgage Ass'n, 991 F.2d 1089, 1094 (3d Cir 1993) ("If the court determines that a given term in a contract is ambiguous, then the interpretation of that term is a question of fact.").  The intent of the parties in employing the ambiguous term as part of the contract likewise is a question of fact that is reserved for the trier of fact.  In re Stendardo, 991 F.2d at 1094 (citing Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 362 (3d Cir. 1987); accord Community College of Beaver County v. Community College of Beaver County, Society of the Faculty, 375 A.2d 1267, 1275 (Pa. 1977) ("It has long been accepted in contract law that an ambiguous written instrument presents a question of fact for resolution by the finder-of-fact, whereas the meaning of an unambiguous written instrument presents a 'question of law' for resolution by the court.").  Where a contractual provision is ambiguous, the fact finder must resolve the ambiguity pursuant to "the extrinsic evidence offered by the parties in support of their respective interpretations." Sanford Inv. Co., inc. v. Ahlstrom Machinery Holdings, Inc., 198 F.3d 415 421 (3d Cir. 1999).

Here, it appears that each party is prepared to offer extrinsic evidence in support of their respective position on the understanding and objective intent flowing from the formation and use of the commission sales formula utilized in the employment contract.  Plaintiff highlights a construction that analyzes the impact of each sales transaction under the Sales Management Incentive Plan ("SMIP") and advances a mathematical formula purportedly supported and bolstered by the terms of the SMIP, discussions and emails between plaintiff and members of Porch's staff, Porch's business plan, agreements with Porch's lead buyers and the testimony of defense witnesses taken in discovery.  This construction considers every "lead leg" generated by Porch regardless of its source as being within the reach of the SMIP; utilizes an approach that considers separately monetization under conditions 2 and 3 for both the buy-side and sell-side in calculating the potential compensation pool; treats unique and exclusive leads separately with

recognition that shared leads or lead legs can qualify for treatment as unique under the formula; treats unique legs as potentially subject to consideration for further monetization under conditions 3 and 4 of the formula; and does not utilize Porch's aggregate enterprise revenue as a limit or cap on earned commissions under the formula.  Defendant in turn limits the leads to be credited to plaintiff to only those generated by plaintiff and the specific sales team under his supervision; utilizes Porch's historical sales data to support its limited application of unique and exclusive lead legs under the compensation formula; utilizes the profitability of lead legs sold by plaintiff and his sales team in calculating the threshold for payout; and employs Porch's operating costs and profit margins as a whole in identifying the thresholds and limits that apply to the payout formula and plaintiff's ability to earn commissions on sales.

It is apparent that each party has utilized a construction of the commissions formula that extends well beyond the objective meaning of the words the parties chose to use in drafting the formula.  As the party seeking to recover for breach of contract, plaintiff has the burden of producing sufficient evidence and convincing the trier of fact that the parties intended that the ambiguous formula be understood and applied in the manner that produces the breach plaintiff has claimed.  Only after plaintiff proves by a preponderance of the evidence that the parties had such an understanding and intent (or some aspects thereof), does an analysis of actual damages become proper.

It follows that bifurcation of the liability issues surrounding a proper construction of the ambiguous commissions formula from the damage calculations that flow from the finder of fact's determinations regarding the same will assist the parties and the court in the efficient and effective presentation of the evidence and the jury's consideration of the issues of fact it is being asked to resolve.  It will likewise avoid the potential for unnecessary or premature consideration of evidence and evidentiary issues that would necessarily accompany the presentation of liability

5

and damages in an unsegmented proceeding.  There does not appear to be any basis to presume or assume that prejudice will ensue from a bifurcated presentation of the case.  Consequently, the court will enter an order bifurcating the jury's consideration of the liability issues arising from the ambiguous compensation formula from the damages, if any, that follow the resolution of the jury's determinations concerning those contract construction issues.

Defendant's position in its motion *in limine* is wide of the mark to the extent it seeks to preclude plaintiff from offering extrinsic evidence in support of his position that the SMIP was understood to apply as he now advocates.   While defendant highlights the seemingly subjective understandings of plaintiff in advancing his formula and application, it has not presented a sound and convincing basis for concluding as a matter of law that the terms and formulation of the SMIP could have led to only one clear and unambiguous understanding given the objective meaning of the language the parties chose to employ.  Tellingly, defendant's position on the meaning of the SMIP and its application to plaintiff takes liberties of an equal degree in incorporating and/or engrafting concepts and understandings that do not readily and unequivocally flow from the linguistic formulation.  Given this state of affairs, application of the controlling contract law does not begin and end with identifying the objective meaning of the terms in the SMIP.[2]

For the reasons set forth above, the trial of plaintiff's claims will be bifurcated into two phases as indicated above.  Defendant's motion *in limine* will be granted to the extent it seeks to preclude plaintiff from proffering James Loeffler as a witness and/or evidence reflecting the computation of damages.  The court will limit defendant's presentation of evidence in phase one

---

[2]  Of course, determinations regarding the admissibility of any actual extrinsic evidence either party might proffer in phase one are beyond the scope of this memorandum opinion.

6

in the same manner: it will be precluded from offering its damages expert, Steve Roberts, and/or

introducing evidence reflecting the computation of damages.  An appropriate order will follow.

Date: December 3, 2020

s/David Stewart Cercone
David Stewart Cercone
Senior United States District Judge

cc:     James W. Southworth, Esquire
        Gregory C. Michaels, Esquire
        Eric L. Schnabel, Esquire
        Aaron D. Goldstein, Esquire
        Jeremy R. Larson, Esquire
        Shelly R. Pagac, Esquire
        Melissa B. Catello, Esquire

        (*Via CM/ECF Electronic Mail*)